Mark R. Thierman, Cal. Bar No. 72913
Joshua D. Buck, Cal. Bar No. 258325
Leah L. Jones, Cal. Bar No. 276448
Joshua R. Hendrickson, Cal. Bar. No. 282180
THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV  89511
Tel. (775) 284-1500
Fax. (775) 703-5027
mark@thiermanbuck.com
josh@thiermanbuck.com
leah@thiermanbuck.com
joshh@thiermanbuck.com

*Attorneys for Plaintiffs RENA NICOLE MEDINA and
ALYSSA BONHAM on behalf of themselves and
all others similarly situated*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RENA NICOLE MEDINA and ALYSSA BONHAM on behalf of themselves and all others similarly situated, | Case No.: |
| Plaintiffs, | **COLLECTIVE AND CLASS ACTION COMPLAINT** |
| vs. | 1) Failure to Pay Minimum Wages for All Hours Worked (29 U.S.C. § 206(a)(1)); |
| NATIONAL STORES INC.; PEGASUS TRUCKING LLC; and DOES 1-100, | 2) Failure to Pay Overtime (29 U.S.C. § 207); |
| Defendants. | 3) Failure to Compensate for All Hours Worked (NRS 608.140 and 608.016); |

1) Failure to Pay Minimum Wages for All Hours Worked (29 U.S.C. § 206(a)(1));

2) Failure to Pay Overtime (29 U.S.C. § 207);

3) Failure to Compensate for All Hours Worked (NRS 608.140 and 608.016);

4) Failure to Pay Minimum Wages for All Hours Worked (Nevada Constitution Section 15 of Article 16);

5) Failure to Pay and Overtime Wages for All Hours Worked (NRS 608.140 and 608.018);

6) Failure to Timely Pay All Wages Due and Owing (NRS 608.140 and 608.020-050);

7) Unlawful Payroll Card Practices in Violation of Nevada Law (NAC 608.1352);

8) Unlawful Payroll Deductions in Violation of the FLSA; and

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

9)  Unlawful Payroll Card Practices in Violation of the Electronic Fund Transfer Act (EFTA) 15 U.S.C. § 1693 et seq.

**JURY TRIAL DEMANDED**

COME NOW Plaintiffs RENA NICOLE MEDINA and ALYSSA BONHAM, on behalf of themselves and all others similarly situated and alleges the following:

All allegations in the Complaint are based upon information and belief except for those allegations that pertain to the Plaintiffs named herein and their counsel. Each allegation in the Complaint either has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

**JURISDICTION AND VENUE**

1.      This Court has original jurisdiction against the employer over the federal claims alleged herein pursuant to the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 216(b) which states: "An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."

2.      This Court has jurisdiction over both the employer and payroll card issuer pursuant to 15 U.S.C. § 1693m(g) which states: "Without regard to the amount in controversy, any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation."

3.      This Court has supplemental jurisdiction over the Nevada state law claims alleged herein pursuant to 28 U.S.C. § 1367 because the state law claims alleged herein all arise out of the same transaction and occurrence, i.e. the failure to properly pay all wages due—and there is no conflict between the procedures applicable to the FLSA and State law claims. *Integrity Staffing Solutions, Inc.,* 2013 U.S. App. LEXIS 7397 (9th Cir. Nev. Apr. 12, 2013) ("In sum, we agree with the other circuits to consider the issue that the fact that Rule 23 class actions use an opt-out mechanism while FLSA collective actions use an Opt-in mechanism does not create a conflict warranting dismissal of the state law claims.")

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

4.      In addition, this Court has jurisdiction over the Nevada statutory and constitutional minimum wage claims alleged herein because the Parties seeking to recover unpaid wages for all hours worked have a private right of action pursuant to Nevada Revised Statute ("NRS") sections 608.020 through 608.050, 608.140, and NRS 608.262 among others. *See e.g., Neville v. Eighth Judicial District Court in & for Cty. of Clark*, Case No. 70696, 133 Nev. Adv. Op. 95, 2017 WL 6273614, at *4 (Dec. 7, 2017) and *Porteous v. Capital One Services II, LLC*, 9th Cir. Unpublished Case: 18-16336 dated 04/14/2020.  In addition, Section 16 of Article 15(B) of the Nevada State Constitution states:

> An employee claiming violation of this section may bring an action against his or her employer in the courts of this State to enforce the provisions of this section and shall be entitled to all remedies available under the law or in equity appropriate to remedy any violation of this section, including but not limited to back pay, damages, reinstatement or injunctive relief. An employee who prevails in any action to enforce this section shall be awarded his or her reasonable attorney's fees and costs.

5.      Venue is proper in this Court because Defendant NATIONAL STORES, INC, is a California Corporation with its principal place of business at 15001 S. Figueroa St., Gardena, CA 90248. Defendant PEGASUS TRUCKING, LLC is prima facie the actual employer under California law because it is listed as the employer on the employees' paystubs and w-2 tax statements with an address at 15001 S. Figueroa St., Gardena, CA 90248.  Upon information and belief, a copy and/or electronic data base of all the relevant records are retained at, and/or accessible through, computers located at this same Gardena, California location.

## PARTIES

6.      Plaintiff RENA NICOLE MEDINA, (hereinafter "Plaintiff" or "MEDINA") is a natural person who is and was a resident of the State of Nevada and had been employed by Defendants as a non-exempt hourly employee from on or about November 26, 2019 to on or about December 8, 2019.  Attached hereto as Exhibit A is a copy of Plaintiff MEDINA's consent to sue to become a party plaintiff to this lawsuit as required by 29 U.S.C. 216(b).

7.      Plaintiff ALYSSA BONHAM, (hereinafter "Plaintiff" or "BONHAM") is a natural person who is and was a resident of the State of Nevada and had been employed by

THERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

Defendants as a non-exempt hourly employee from on or about November 26, 2019 to December 2, 2019.  Attached hereto as Exhibit B is a copy of Plaintiff BONHAM's consent to sue to become a party plaintiff to this lawsuit as required by 29 U.S.C. 216(b).

8.      Defendant NATIONAL STORES INC. is a family-owned company headquartered in the Harbor Gateway area of Los Angeles, California with 344 locations in 22 states and Puerto Rico, employing 9,800 people nationwide as of August 2018.  National Stores Inc. does business as: FALLAS, FALLAS PAREDES, FALLAS DISCOUNT STORES, FACTORY 2-U, CONWAY, WEINER'S, CW PRICE, FALAS (spelled with single "l" in Puerto Rico) and ANNA'S LINEN'S by FALLAS, and offers brand name and private label clothing for men, ladies, boys, girls, juniors, infants and toddlers along with lingerie, shoes, and household items.  Mr. Michael Fallas is listed as the Agent of Service for NATIONAL STORES INC. at the following address: 15001 S. Figueroa St., Gardena, CA 90248.

9.      Defendant PEGASUS TRUCKING LLC is listed as the employer on Plaintiffs' itemized pay statement and w-2 tax statement*s* with an address at 15001 S. Figueroa St., Gardena, CA 90248.  Mr. Michael Fallas is listed as the Agent of Service for PEGASUS TRUCKING LLC at the following address: 15001 S. Figueroa St., Gardena, CA 90248.

10.     Defendant NATIONAL STORES INC. and Defendant PEGASUS TRUCKING LLC are collectively referred to throughout this Complaint as "Defendants".

11.     Defendants, and each of them, are employers under the FLSA and are engaged in commerce for the purposes of the FLSA, 29 U.S.C.§ 201 *et. seq*.  Defendants, and each of them, are also employers under the provisions of Nevada Revised Statutes Chapter 608.  For labor relations purposes, Defendants, each and together, constitute the employer and/or joint employer of Plaintiffs and all Plaintiff class members for each of the classes alleged herein.

12.     The identity of DOES 1-50 is unknown at this time and this Complaint will be amended at such time when the identities are known to Plaintiffs.  Plaintiffs are informed and believe that each of Defendants sued herein as DOE is responsible in some manner for the acts, omissions, or representations alleged herein and any reference to "Defendant," "Defendants," or "FALLAS" herein shall mean "Defendants and each of them."

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

## FACTUAL ALLEGATIONS

### A.   System-wide Shorting Of Hours by Manual Override Of Electronic Time Clocks

13.     Plaintiffs were employed by Defendants as non-exempt hourly paid "Merchandizers" at Defendant's store number 403 located at 6895 Sierra Center Parkway, Reno, Nevada.  At the time of hire and throughout their employment, Plaintiffs were told that they were to be paid at $10.00 per hour for each and every hour worked.  Plaintiffs accepted the offer of employment based upon that agreed upon hourly wage rate for all hours worked and began working under that agreement.

14.     But Defendants did not pay Plaintiffs for all hours worked.  Instead, Plaintiffs were paid less than half the federal and state minimum wage per hour worked despite the fact that Defendants never revised their contract of employment to reflect this lower hourly wage rate.

15.     Like all or most of the Defendant's retail stores, Fallas Store 403 uses an electro-mechanical system for clocking in and clocking out hourly paid workers.

16.     The hourly paid employees are required to "clock in" when they begin work, and "clock out" when they stop working.  Employees are also required to clock in and clock out for lunch breaks.  Clocking devices are located immediately adjacent to the work area, and company policy prohibits employees from loitering on site without working once they are clocked in.

17.     Company policy prohibits the employees from clocking in early without going to work or clocking out later than when they stop working.

18.     The computer system connected to the electro-mechanical timekeeping devices accurately reports the minimum amount of time worked by each employee.  In other words, employees may be suffered or permitted to work before and after their clock in times, commonly known as working off the clock, but all clocked in time is working time and must be compensated.  The computer system then uses the clock-in and clock-out data to calculate wages due to each employee.

19.     Notwithstanding this fool proof method of insuring that employees were paid for all hours that they reportedly worked, Defendants allowed, suffered and/or permitted managers

and district managers to systematically utilize a system of manually adjusting the time entries so that the employees are not compensated for all hours worked.

20.     A true and correct copy of the time entry interface is attached as Exhibit C. As can be seen from Exhibit C, the clock-in and clock-out time entry results are available for review in printed form, or on a computer screen, by store, by time period.

21.     Whenever there is a manual override of time recorded electronically, the printout states "WARNING" on the time reports.

22.     Exhibit C shows an excessive number of "warnings" for the time worked, indicating that the employer was not merely correcting for clerical mistakes like missing punches, but that the employer was systematically shorting hours worked, usually to achieve company mandated "labor budget" goals and projections.

23.     For example, in one, seven-day week, Exhibit C shows that store cashier Cynthia Giles worked five days, and four of those days contain a manual override of the actual time recorded.  Both Plaintiffs Medina and Bonham have one out of three days worked in the first week reported as a manual override.  In the next week, the computer printout for Plaintiff Bonham shows four out of four days marked "warning" which means that every day was manually overridden by the store manager or other management employee.  And Plaintiff Medina has two out of four days marked "Warning," meaning her time was manually adjusted half the working days in that workweek.

24.     In addition, the employer automatically deducted one-half hour per employee per shift for unpaid lunch or meal breaks, but frequently required employees to return to work before one-half hour of time at rest.  This automatic deduction for one-half hour meal period, when the employee was working, routinely resulted in unpaid work time.

25.     NRS 608.019(1) states, in relevant part: "No period of less than 30 minutes interrupts a continuous period of work for the purposes of this subsection."

26.     During her time employed by Defendants, Plaintiff Medina actually worked approximately 195 hours at the regular agreed upon rate of $10.00 per hour.  However, based upon the amount of her direct deposit for wages, divided by the hours actually worked in that

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

approximately two-week period, Defendant paid Plaintiff Medina $2.86 per hour assuming time and one half for hours worked in excess of eight (8) per day, as required by Nevada law, and $2.98 per hour without daily overtime, assuming only the weekly overtime premium applied under the Federal Fair Labor Standards Act.

27.     During her time of employment, Plaintiff Bonham actually worked over 149 hours at the promised regular rate of $10.00 per hour.  However, based upon the amount deposited to her pay card as earned wages, divided by the hours actually worked in that approximately two-week period covered by the December 11, 2019 pay card, Defendants paid Plaintiff Bonham .66 cents an hour without daily overtime under Nevada law, and .56 cents per hour with daily overtime at time and one half.

**B.     Rebate and Wage Forfeitures by Payroll Card for the Employer's Benefit**

28.     Payroll cards provide an economic benefit to the employer by lowering the employer's cost of paying employee wages.

29.     According to Visa, a payroll card deposit costs an employer $0.35 compared to $2.00 to issue a paper check.  Visa reports that employers who have switched to payroll cards have saved up to 65% in payroll processing costs.  *See*, Visa Payroll Card: Reinvent Payday With An Easier, More Cost-Effective Way to Pay and Get Paid (2010), available at http://usa.visa.com/download/business/visa-payroll-profile.pdf (last visited June 11, 2014), *cited* in Office of N.Y. State Att'y Gen., Pinched by Plastic: The Impact of Payroll Cards on Low-Wage Workers (2014), http://www.ag.ny.gov/pdfs/Pinched%20by%20Plastic.pdf. (last visited 2/20/2020).

30.     Depending on which payroll card system the employer selects, a payroll card system for payment of wages can be neutral, beneficial, or harmful to employees.

31.     Particularly at risk for abuse by a payroll card system are low-wage workers and/or those with limited financial and literacy skills.  Such employees, like Plaintiff BONHAM, often do not have a regular bank account in which to make direct deposit payments.

32.     An employer who chooses to use a payroll card system in lieu of payments in cash or by check redeemable locally, has a duty to make sure that the payroll card system does not

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

THERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

charge employees for the employer's cost of being paid wages that the employees were promised and that are due to the employees "free and clear" without rebate of any kind.

33. Employees do not have the choice to select payment of wages from Defendants in cash or in the form of a check drawn on a local bank, credit union, savings and loan or other financial institution.

34. The Money Network Payroll Program allows for a form of check writing, such checks are only payable without discount or fee at a participating Money Network Check Cashing location.

35. Defendants require that all employees who do not elect to be paid by direct deposit into a bank, credit union of other financial institution, must accept payment in the form of a credit on a Money Network Payroll Card.

36. Nevada Administrative Code (NAC) 608.135(2) states: An employer may use an electronic payment system, including, but not limited to, a direct deposit, debit card or similar payment system, as an alternative location of payment if: (a) The employee can obtain immediate payment in full; (b) The employee receives at least one free transaction per pay period and any fees or other charges are prominently disclosed to and subject to the written consent of the employee; (c) The alternative location of payment is easily and readily accessible to the employee (d) There are no other requirements or restrictions that a reasonable person would find to be an unreasonable burden or inconvenience; and (e) The use of an electronic payment system is optional at the election of the employee.

**C.    Electronic Fund Transfer Act (EFTA) 15 USC 1693 et seq**

37. 15 U.S.C. § 1693k(2) states: "No person may- require a consumer to establish an account for receipt of electronic fund transfers with a particular financial institution as a condition of employment or receipt of a government benefit."

38. 15 U.S.C. § 1693i prohibits the issuance, absent certain disclosures, of unsolicited validated cards that provide access to a "consumer's account." Id. § 1693i. A card is "validated when it may be used to initiate an electronic fund transfer." Id. § 1693i(c).

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

39.     15 U.S.C. § 1693(l)-1 prohibits charging service fees to "general-use prepaid cards" unless the card has not been used for 12 months and other requirements have been met. Id. § 1693l-1(b). A general-use prepaid card is (1) "redeemable at multiple, unaffiliated merchants or services providers, or automated teller machines"; (2) "issued in a requested amount"; (3) "purchased or loaded on a prepaid basis"; and (4) "honored . . . by merchants for goods or services, or at automated teller machines." Id. § 1693l-1(a)(2)(A).

40.     Defendants indirectly "offer[], advertise[], or . . . promote[]" the Money Network Payroll Card system their employees which  constitutes a large section of the general public. *See* 12 C.F.R. § 1005.20(b)(4); *Brown v. Stored Value Cards, Inc.,* No. 18-35735 (9th Cir. Mar. 16, 2020)

41.     12 C.F.R. § 1005.2(b)(3), states that "[t]he term [account] includes a prepaid account."

42.     Defendants paid Plaintiff BONHAM and all other employees who did not elect to have direct deposit their wages as a credit on a Money Network payroll card whether they wished to or not.

43.     Although the Money Network Payroll Card brochure includes an arbitration waiver embedded within an arbitration provision, such a document was delivered with the card itself after, and not before, wages were due and owing the employee. The Money Network Payroll Card has no value except for amount of payroll already earned by the employee diverted to the Card instead of being paid by check or in cash.

44.     Therefore, the only consideration for agreeing to the terms and conditions of the Money Network Payroll Card system is the payment of wages already due and owing to all the employees who are required to receive their wages on the Money Network Payroll Card, including  Plaintiff BONHAM, are wages already owned by the employee.  In other words, the employee receives no benefit from the Money Network Payroll Card system except to collect that which is legally owed to the employee already. Therefore, under the laws of every state, there is no legal consideration for the employee agreeing to the provisions of the Money Network Payroll Card, including but not limited to its arbitration provisions.

45.     Upon information and belief, all non-Money Network ATM machines owned and/or operated by banks, credit unions and/or other financial institutions not expressly affiliated with the Money Network system charge a fee for using their ATMs to disburse funds.

46.     In addition to the fee charged by any non-affiliated ATM for processing a withdrawal from the Money Network system, Money Network itself charges an additional fee for using a non-Money Network ATM to access a Money Network account, after the first withdrawal during the pay period.

47.     Upon information and belief, other cash cards like Schwab Visa Debit card, rebate all fees charged by other institutions ATMs and charge no fees themselves for accessing one's own money through an ATM machine.  Without a rebate to the users of its payroll cards, Money Network is incentivized to have fewer of its own ATM machines available to its users.   In addition, the fees charged by Money Network itself for its users to use another institution's ATM machine are unreasonable compared to the costs to Money Network.

48.     In addition, most, if not all, ATMs disburse funds in amounts no less than $20.00 increments.  In addition, merchants that give "cash back" when someone purchases using a debit card, also restrict their cash back to five, ten or twenty dollars (or more) over the purchases made, and do not allow cash back of sums less than these minimums.  Therefore, although the employee may have been told that he or she is entitled to wages in an amount more than $20.00 increments of an ATM or more than the lowest "cash back" amount allowed by a merchant, the employee cannot withdraw the entire balance of his or her Money Network Payroll card.

49.     As a result, employees forfeit the amount of money they earned but cannot access due to these limits.

50.     Therefore, Plaintiff and all other employees who are paid by the Money Network payroll card, must pay a fee to convert their Money Network payroll card into lawful currency and forfeit an amount each pay period because any odd "residual" amount is incapable of being accessed by the employee.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

51.     As a result, whatever regularly hourly rate these employees were promised to have been paid, the employee actually receives a lesser rate "free and clear" because they can't access the money that is in their "account" without paying these fees and/or experiencing a forfeiture.

52.     As a result, whatever overtime rate employees are required by law to actually receive as one- and one-half times their agreed upon hourly rate of pay, the employees actually receive a lesser rate because of these fees and forfeitures.

<u>**COLLECTIVE AND CLASS ACTION ALLEGATIONS**</u>

53.     Plaintiffs reallege and incorporate by reference all the paragraphs above in the Complaint as though fully set forth herein.

54.     Plaintiffs bring this action on behalf of themselves and all other similarly situated hourly paid employees of the Defendants employed in as both a collective action under the FLSA and as to employees who worked in Nevada during the relevant time, a true Rule 23 class action under Nevada law.

55.     The **FLSA WAGE CLASS** is defined as follows: "All current and former hourly paid, non-exempt employees who were employed by Defendants within the United States and Puerto Rico during the relevant time period and who have more than one manual override to the electro-mechanical time keeping system resulting in hours "clocked in but not paid."

56.     With regard to the conditional certification mechanism under the FLSA, Plaintiffs are similarly situated to those that they seek to represent for the following reasons, among others:

> A.     Defendants employed Plaintiffs as hourly-paid employees whose hours of work were falsely reported and therefore, did not receive the federal minimum wage and did not receive overtime premium pay at one and one-half times the regular hourly rate of pay (but not less than the minimum wage) for all hours worked over forty (40) hours in a workweek.

> B.     Plaintiffs' situation is similar to those they seek to represent because Defendants failed to pay Plaintiffs and all other **FLSA CLASS** Members for all time they were required to work, but were not paid because of

**THIERMAN BUCK LLP**
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

THERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thermanbuck.com www.thermanbuck.com

manual alterations to the electro-mechanical time and attendance record keeping system.

C.    Common questions exist as to: 1) Whether the time changed from the employers records, which was not compensated, was time worked for which payment was due; 2) Whether, as a result thereof, Defendants failed to pay Plaintiffs and **FLSA CLASS** Members the federal minimum wage for all hours worked as required by law, and 3) Whether, as a result thereof, Defendants failed to pay Plaintiffs and **FLSA CLASS** Members one and one-half times their regular hourly agreed upon rate (but not less than the minimum wage) for all hours worked in excess of 40 hours a week; and

D.    Upon information and belief, Defendants employ, and have employed, in excess of 1,000 FLSA WAGE CLASS Members within the applicable statute of limitations.

E.    Plaintiffs have signed Consent to Sue forms which have been filed with the Court. Consent to sue forms are not required for state law claims under Rule 23 of the Nevada Rules of Civil Procedure.

57.    The **NEVADA WAGE CLASS** is defined as follows: "All current and former hourly paid, non-exempt employees who were employed by Defendants within the State of Nevada during the relevant time period and who have more than one manual override to the electro-mechanical time keeping system resulting in hours "clocked in" but not paid." The **NEVADA WAGE CLASS** is further divided into the following sub-class:

A.    **WAGES DUE AND OWING SUB-CLASS**: All members of the **NEVADA WAGE CLASS** who, at any time during the Class Period, were terminated or otherwise separated from employment.

58.    The **NEVADA MONEY NETWORK PAYROLL CARD CLASS** is defined as follows: "All former employees who were employed by Defendant in the State of Nevada during

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

the relevant period of time and who during their employment received payroll wages, including termination pay, through and/or in the form of a Money Network Payroll Card."

59.     The **FEDERAL MONEY NETWORK PAYROLL CARD CLASS** is defined as follows: "All former employees who were employed by Defendants in the United States and Puerto Rico during the relevant period of time and who during their employment received payroll wages, including termination pay, through in the form of a Money Network Payroll Card."

60.     Rule 23 treatment is appropriate for the **NEVADA WAGE CLASS** and the **WAGES DUE and OWING SUB-CLASS**, the **NEVADA MONEY NETWORK PAYROLL CARD CLASS** and the **FEDERAL MONEY NETWORK PAYROLL CARD CLASS** for the following reasons:

A.     <u>Class Members are Numerous</u>.  The **NEVADA WAGE CLASS** and the **WAGES DUE and OWING SUB-CLASS**, and the **NEVADA MONEY NETWORK PAYROLL CARD CLASS** and **the FEDERAL MONEY NETWORK PAYROLL CARD CLASS** are each sufficiently numerous.  Upon information and belief, Defendants employ, and has employed, in excess of 500 employees within the **NEVADA WAGE CLASS** and the **WAGES DUE and OWING SUB-CLASS**, the **NEVADA MONEY NETWORK PAYROLL CARD CLASS** and the **FEDERAL MONEY NETWORK PAYROLL CARD CLASS** within the applicable statute of limitations.  Because Defendants are legally obligated to keep accurate payroll and employment records, the members of each subclass is ascertainable from the employers records.

B.     <u>Class Members are Easily Ascertainable</u>.  Members of the **NEVADA WAGE CLASS** and the **WAGES DUE and OWING SUB-CLASS**, the **NEVADA MONEY NETWORK PAYROLL CARD CLASS** and the **FEDERAL MONEY NETWORK PAYROLL CARD CLASS** are easily ascertainable.  Plaintiffs allege that Defendants' records will establish the identity and ascertainably of members of the **NEVADA**

WAGE CLASS and the **WAGES DUE AND OWING SUB-CLASS** by identifying all those employee whose time records show significant manager overrides within the applicable time period, and if that employee was terminated or is still employed. Members of the **NEVADA MONEY NETWORK PAYROLL CARD CLASS** and the **FEDERAL MONEY NETWORK PAYROLL CARD CLASS** are also ascertainable by reference to the employers' and the Money Network's records of which employees had payroll cards, and which if any, paid fees for use of the cards, and/or forfeited sums too small to be withdrawn from an ATM machine.

C. <u>Plaintiffs' Claims are Typical to Those of Fellow Class and Sub-Class Members</u>. Each person who is a member of the **NEVADA WAGE CLASS** and **WAGES DUE AND OWING SUB-CLASS, NEVADA MONEY NETWORK PAYROLL CARD CLASS** and the **FEDERAL MONEY NETWORK PAYROLL CARD CLASS** is and was subject to the same practices, plans, and/or policies as Plaintiffs, as follows: 1) Defendants required Plaintiffs and all other individuals who were members **of NEVADA WAGE CLASS** to engage in pre-shift and post-shift activities without compensation; and 2) As a result of working employees without compensation off the clock, Defendants failed to pay Plaintiffs and all members of the **WAGES DUE AND OWING SUB-CLASS** all wages due and owing at the time of their termination or separation from employment; and 3) Plaintiffs and all members of the **NEVADA MONEY NETWORK PAYROLL CARD CLASS** and **the FEDERAL MONEY NETWORK PAYROLL CARD CLASS** were paid by a Money Network card that was not reasonably converted to cash at a local financial instruction and could not be used without paying a fee, which was under the circumstance not reasonable.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

D.  <u>Common Questions of Law and Fact Exist</u>. Common questions of law and fact exist and predominate as to Plaintiffs and the NE**VADA WAGE CLASS** and **WAGES DUE AND OWING SUB-CLASS**, **NEVADA MONEY NETWORK PAYROLL CARD CLASS**, and the **FEDERAL MONEY NETWORK PAYROLL CARD CLASS** including, without limitation the following: 1) Whether Plaintiffs and all other individuals who were members of the **NEVADA WAGE CLASS** were compensated for "all time worked by the employee at the direction of the employer, including time worked by the employee that is outside the scheduled hours of work of the employee" pursuant to the Nevada Administrative Code ("NAC") 608.115(1), and NRS 608.016; and 2) Whether Defendants delayed final payment to Plaintiffs and all separated class Members in violation of NRS 608.020-050; 3); and Whether Defendants violated federal and/or Nevada  state law by paying employees with a Money Network card.

E.  <u>Plaintiffs Are Adequate Representatives of the Classes</u>. Plaintiffs will fairly and adequately represent the interests of the **NEVADA WAGE CLASS** and **WAGES DUE AND OWING SUB-CLASS**, **NEVADA MONEY NETWORK PAYROLL CARD CLASS** and the **FEDERAL MONEY NETWORK PAYROLL CARD CLASS**  because Plaintiffs are members of each of these classes, Plaintiffs have issues of law and fact in common with all members of each of these classes, and Plaintiffs do not have any interests antagonistic to the members of any of these classes. Plaintiffs and Counsel are aware of their fiduciary responsibilities to the members of each of the above described classes and are determined to discharge those duties diligently and vigorously by seeking the maximum possible recovery for all of the classes as a group.

**THIERMAN BUCK LLP**
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

F.  <u>Class Issues Predominate and a Class Action Is A Superior Mechanism to Hundreds of Individual Actions</u>.  Class issues predominate, and a class action is superior to other available means for the fair and efficient adjudication of this controversy, because individual joinder of all members of the Classes is impractical.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of effort and expense.  Furthermore, the expenses and burden of individualized litigation would make it difficult or impossible for individual members of the Classes to redress the wrongs done to them, while and important public interest will be served by addressing the matter as a class action.  Individualized litigation would also present the potential for inconsistent or contradictory judgments.  In addition, for the **FEDERAL MONEY NETWORK PAYROLL CARD CLASS** , 15 U.S.C. § 1693m specifically contemplates such class action status for limitation of the penalty amounts (in addition to actual damages suffered by the class members).

<u>**FIRST CAUSE OF ACTION**</u>

**Failure to Pay Minimum Wages in Violation of the FLSA, 29 U.S.C. § 206(a)(1)**

**(On Behalf of Plaintiffs and all members of the FLSA CLASS Against Defendants)**

61.  Plaintiffs reallege and incorporates by reference all the paragraphs above in the Complaint as though fully set forth herein.

62.  29 U.S.C. § 206(a)(l) states that "Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates: (1) except as otherwise provided in this section, not less than (A) $5.85 an hour beginning on the 60th day after the enactment of the Fair Minimum

COLLECTIVE AND CLASS ACTION COMPLAINT

Wage Act of 2007; (B) $6.55 an hour, beginning 12 months after that 60th day; and C) $7.25 an hour, beginning 24 months after that 60th day."

63.   By failing to compensate Plaintiffs and **FLSA CLASS** Members all working time recorded electronically, Defendants failed to pay Plaintiffs and **FLSA CLASS** Members minimum wages in violation of 29 U.S.C. Section 206(a)(1).

64.   Defendants' unlawful conduct has been widespread, repeated, and willful. Defendants knew or should have known that its policies and practices have been unlawful and unfair.

65.   Wherefore, Plaintiffs demands for herself and for all others similarly situated, that Defendants pay Plaintiffs and all other members of the **FLSA CLASS** the minimum hourly wage rate or their regular rate of pay, whichever is greater, for all hours worked during the relevant time period together with liquidated damages, attorneys' fees, costs, and interest as provided by law.

## SECOND CAUSE OF ACTION

### Failure to Pay Overtime Wages in Violation of the FLSA, 29 U.S.C. § 207

### (On Behalf of Plaintiffs and all members of the FLSA CLASS Against Defendants)

66.   Plaintiffs reallege and incorporate by reference all the paragraphs above in the Complaint as though fully set forth herein.

67.   29 U.S.C. Section 207(a)(1) provides as follows:  "Except as otherwise provided in the section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

68.   By failing to compensate Plaintiffs and **FLSA CLASS** Members all working time recorded electronically, Defendants failed to pay Plaintiffs and **FLSA CLASS** Members minimum wages for all hours worked, and overtime for all hours worked in excess of forty (40) hours in a week in violation of 29 U.S.C. § 207(a)(1).

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

69.     Wherefore, Plaintiffs demand for themselves and for all others similarly situated, that Defendants pay Plaintiffs and **FLSA CLASS** Members one and one-half times their regular hourly rate of pay for all hours worked in excess of forty (40) hours a week during the relevant time period together with liquidated damages, attorneys' fees, costs, and interest as provided by law.

### THIRD CAUSE OF ACTION

**Failure to Pay Wages for All Hours Worked -NRS 608.140 and 608.016**

**(On Behalf of Plaintiffs and all members of the NEVADA WAGE CLASS Against Defendants)**

70.     Plaintiffs reallege and incorporate by the reference all the paragraphs above in the Complaint as though fully set forth herein.

71.     NRS 608.140 provides that an employee has a private right of action for unpaid wages.

72.     NRS 608.016 states, "An employer shall pay to the employee wages for each hour the employee works."  Hours worked means anytime the employer exercises "control or custody" over an employee.  See NRS 608.011 (defining an "employer" as "every person having control or custody . . . of any employee.").

73.     Pursuant to the Nevada Administrative Code, hours worked includes "all time worked by the employee at the direction of the employer, including time worked by the employee that is outside the scheduled hours of work of the employee."  NAC 608.115(1).

74.     By failing to compensate Plaintiffs and **NEVADA WAGE CLASS** Members for the time spent recorded as working but manually overridden as identified above, Defendants failed to pay Plaintiffs and **NEVADA WAGE CLASS** Members for all hours worked in violation of NRS 608.140 and 608.016.

75.     Wherefore, Plaintiffs demand for themselves and for all **NEVADA WAGE CLASS** Members payment by Defendants, at their hourly rate of pay for all wages due for the times worked but not paid during the relevant time period as shown by the electro-mechanical

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

time keeping system before manual overrides, together with attorneys' fees, costs, and interest as provided by law.

### FOURTH CAUSE OF ACTION

**Failure to Pay Minimum Wages in Violation of the Nevada Constitution**

**(On Behalf of Plaintiffs and all members of the NEVADA WAGE CLASS Against Defendants)**

76.     Plaintiffs reallege and incorporates by reference all the paragraphs above in the Complaint as though fully set forth herein.

77.     Article 15 Section 16 of the Nevada Constitution sets forth the requirements the minimum wage requirements in the State of Nevada and further provides that "[t]he provisions of the section may not be waived by agreement between an individual employee and an employer. . . .     An employee claiming violation of the section may bring an action against her or her employer in the courts of the State to enforce the provisions of the section and shall be entitled to all remedies available under the law or in equity appropriate to remedy any violation of the section, including but not limited to back pay, damages, reinstatement or injunctive relief.  An employee who prevails in any action to enforce the section shall be awarded her or her reasonable attorney's fees and costs."

78.     By failing to compensate Plaintiffs and the individuals who were members of the **NEVADA WAGE CLASS**  for all working time as electronically recorded, Defendants failed to pay Plaintiffs and members of the  **NEVADA WAGE CLASS** the minimum wage amount for all hours worked in violation of the Nevada Constitution.

79.     Wherefore, Plaintiff demands for herself and for individuals who are members of the **NEVADA WAGE CLASS** payment by Defendant at their regular hourly rate of pay or the minimum wage rate, whichever is higher, for all hours worked during the relevant time period together with attorneys' fees, costs, and interest as provided by law.

### FIFTH CAUSE OF ACTION

**Failure to Pay Overtime Wages in Violation of NRS 608.140 and 608.018**

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

**(On Behalf of Plaintiffs and all members of the NEVADA WAGE CLASS Against Defendants)**

80.     Plaintiffs reallege and incorporate by this reference all the paragraphs above in this Complaint as though fully set forth herein.

81.     NRS 608.140 provides that an employee has a private right of action for unpaid wages.

82.     NRS 608.018(2) provides as follows: "An employer shall pay 1 1/2 times an employee's regular wage rate whenever an employee who receives compensation for employment at a rate not less than 1 1/2 times the minimum rate prescribed pursuant to NRS 608.250 works (a) More than 40 hours in any scheduled week of work or (b)  More than 8 hours in any workday unless by mutual agreement the employee works a scheduled 10 hours per day for 4 calendar days within any scheduled week of work.

83.     By failing to compensate Plaintiffs and all individuals who are members of the **NEVADA WAGE CLASS** for  all working time as it is recorded electronically, Defendants failed to pay, daily premium overtime rate of time and one half their regular rate to Plaintiffs, and all individuals who are members of the **NEVADA WAGE CLASS** who earned less than $12.38 per hour, and who worked in excess of 8 hours per shift, and failed to pay weekly overtime to  all members of the **NEVADA WAGE CLASS** who worked in excess of  over forty (40) hours in a week in violation of NRS 608.140 and 608.018.

84.     Wherefore, Plaintiffs demand for themselves and for all individuals who are members of the **NEVADA WAGE CLASS** Members one and one-half times their regular hourly rate of pay for all hours worked in excess of forty (40) hours a workweek, and daily overtime at one and one-half times their regular hourly rate of pay for those members of the **NEVADA WAGE CLASS** who were paid less than $12.38 per hour and who worked more than 8 hours in a 24 hour period, during the relevant time period alleged herein together with attorneys' fees, costs, and interest as provided by law.

## SIXTH CAUSE OF ACTION

**THIERMAN BUCK LLP**
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

**Failure to Timely Pay All Wages Due and Owing Upon Termination Pursuant to NRS 608.140 and 608.020-.050**

**(On Behalf of Plaintiffs and the WAGES DUE AND OWING SUB-CLASS Against Defendants)**

85.     Plaintiffs reallege and incorporates by reference all the paragraphs above in the Complaint as though fully set forth herein.

86.     NRS 608.140 provides that an employee has a private right of action for unpaid wages.

87.     NRS 608.020 provides that "[w]henever an employer discharges an employee, the wages and compensation earned and unpaid at the time of such discharge shall become due and payable immediately."

88.     NRS 608.040(1)(a-b), in relevant part, imposes a penalty on an employer who fails to pay a discharged or quitting employee: "Within 3 days after the wages or compensation of a discharged employee becomes due; or on the day the wages or compensation is due to an employee who resigns or quits, the wages or compensation of the employee continues at the same rate from the day the employee resigned, quit, or was discharged until paid for 30-days, whichever is less."

89.     NRS 608.050 grants an "employee lien" to each discharged or laid-off employee for the purpose of collecting the wages or compensation owed to them "in the sum agreed upon in the contract of employment for each day the employer is in default, until the employee is paid in full, without rendering any service therefor; but the employee shall cease to draw such wages or salary 30 days after such default."

90.     By failing to pay Plaintiffs and all members of the **WAGES DUE AND OWING SUB-CLAS**S for all hours worked in violation of state and federal law, at the correct legal rate, Defendants have failed to timely remit all wages due and owing to Plaintiff and all members of the WAGES DUE AND OWING SUB-CLASS.

91.     Despite demand, Defendants willfully refuses and continues to refuse to pay Plaintiffs and all WAGES DUE AND OWING SUB-CLASS Members.

92.     Wherefore, Plaintiffs demand for themselves and all members of the WAGES DUE AND OWING SUB-CLASS thirty (30) days wages under NRS 608.140 and 608.040, and an additional thirty (30) days wages under NRS 608.140 and 608.050, together with attorneys' fees, costs, and interest as provided by law.

**SEVENTH CAUSE OF ACTION**

**Unlawful Payroll Card Practices in Violation of Nevada Law, NAC 608.1352**

**(On Behalf of Plaintiff BONHAM and the NEVADA MONEY NETWORK PAYROLL**

**CARD CLASS Against Defendants)**

93.     Plaintiffs reallege and incorporate by this reference all the paragraphs above in this Complaint as though fully set forth herein.

94.     Nevada Administrative code (NAC) 608.1352 states:  An employer may use an electronic payment system, including, but not limited to, a direct deposit, debit card or similar payment system, as an alternative location of payment if: (a) The employee can obtain immediate payment in full;  (b) The employee receives at least one free transaction per pay period and any fees or other charges are prominently disclosed to and subject to the written consent of the employee; (c)  The alternative location of payment is easily and readily accessible to the employee; (d)  There are no other requirements or restrictions that a reasonable person would find to be an unreasonable burden or inconvenience; and (e) The use of an electronic payment system is optional at the election of the employee.

95.     Defendants' payroll card system violates NAC 608.1352(a), (c), (d) and (e).

96.     Defendants' payroll card system violates NAC 608.1352(a) because Plaintiff cannot receive immediate payment in full. For example, the employee cannot go to the Fallas store which issued the payroll card to withdraw the entire amount of the payroll card at the time his or her wages are due. In addition, an employee cannot withdraw the entire amount of his or her wages anywhere (even at a local ATM) immediately in the first use because the ATM provider limits withdrawals to $500 per transaction, and because the ATM will not distribute the residue amounts less than $20.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

97.     Defendants' payroll card system violates NAC 608.1352 (e) because there is no written consent.

98.     Defendants' payroll card system violates NAC 608.1352 (d) because (among other reasons, like paying a fee to access one's own money), the Money Network and/or the employer earns money on the forced deposits of the employees, collects a fee for using another bank's ATM, and does not reimburse the payroll card holder the costs the other bank charges the cardholder for the transaction.  In addition, the Money Network receives the default of money not collected because ATM's only disburse in $20 increments.

99.     Defendants violated NAC 608.1352 (e) because the payroll card system is the "default" system of payment of wages unless the employee elects direct deposit. Employees are required to accept the payroll card as payment if they do not elect direct deposit, and therefore do not voluntarily consent to the process.

100.     Because the Defendants' payroll card system does not satisfy the requirements of NAC 608.1352, the Defendants have failed to pay all minimum wages, regular rate wages and overtime wages due as required by the Nevada Minimum Wage Amendment of the Nevada Constitution, NRS 608.016, 608.018, and Defendants have failed to pay all continuation wages authorized by 608.020-.050 to Plaintiff and class members who are former employees.

## EIGHTH CAUSE OF ACTION

### Unlawful Payroll Deductions in Violation of the FLSA

### (On Behalf of Plaintiff BONHAM and the FEDERAL MONEY NETWORK PAYROLL CARD CLASS Against Defendants)

101.     Plaintiffs reallege and incorporates by reference all the paragraphs above in the Complaint as though fully set forth herein.

102.     For an employee who is "employed solely on the basis of a single hourly rate, the hourly rate is the [employee's]'regular rate.'"  *See* 29 C.F.R. § 778.110(a).

103.     If an employee designates to receive his or her pay by direct deposit, then the regular rate is the same as the hourly rate promised.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

104.     But an employee who is issued a payroll card does not receive the agreed upon regular rate.

105.     As a result, an employee who is issued a payroll card is not paid an overtime rate equal to one and one-half the promised hourly rate which for an hourly paid employee, is the regular rate.  *See*, generally, *Sobczak v. AWL Industries, Inc.*, 540 F. Supp. 2d 354 (E.D.N.Y. 2007) (The FLSA protects plaintiffs who have been paid far in excess of the minimum wage, and who have also been paid overtime, but whose base rate was lower than the contractual rate to which they were allegedly entitled.)

106.     29 CFR 531.35 states: Whether in cash or in facilities, "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer ***or to another person for the employer's benefit*** the whole or part of the wage delivered to the employee. This is true whether the "kick-back" is made in cash or in other than cash. For example, if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act. *See also*, § 531.32(c).  (emphasis supplied.)

107.     Just as in the case of *Silfee v. Automated Data Processing, Inc.*, CIVIL ACTION No. 3:15-CV-00023 (M.D. Pa. Sep. 15, 2016), where the Money Network payroll card system has been declared to be a fee imposed by the employer for the benefit of the employer on payment of wages due, and thus an illegal kickback, the Defendants herein has not paid all wages due as promised by the contract of employment and has not paid overtime based on one and one half the "regular rate" of pay.  *See also*, *Hussein v. Capital Bldg. Servs. Grp., Inc.*, 152 F. Supp. 3d 1182 (D. Minn. 2015) (granting conditional certification in the FLSA context based in part upon allegations that the payroll card system was an unlawful fee on wages earned).

THERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thermanbuck.com www.thermanbuck.com

108.    Some employees are paid an hourly wage which, after deduction of the costs of the payroll card is less than the minimum wage required by law.

109.    The foregoing violations were willful.

110.    Because the cost of the payroll card system reduces the wages of some employees less than the minimum wage, and reduces the overtime rate paid to all employees who work in excess of 40 hours in a work week to less than one and one half the true agreed upon regular rate, Plaintiffs seek restitution in lost wages, and amounts forfeited and/or paid to the Money Network payroll system from wages due, attorneys fees and costs.

## NINTH CAUSE OF ACTION

**Unlawful Payroll Card Practices Violation of the Electronic Fund Transfer Act (EFTA)**

**15 U.S.C. § 1693 et seq.**

**(On Behalf of Plaintiff BONHAM and the FEDERAL MONEY NETWORK PAYROLL CARD CLASS Against Defendants)**

111.    Plaintiff BONHAM realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

112.    Plaintiff **BONHAM** and all members of the **FEDERAL MONEY NETWORK PAYROLL CARD CLASS** are consumers as that term is used in the Electronic Funds Transfer Act (15 U.S.C. § 1693 et seq.

113.    The primary objective of the EFTA is to protect consumer rights by providing a basic framework establishing the rights, liabilities, and responsibilities of participants in the electronic fund and remittance transfer systems.

114.    Employees whose wages are deposited onto a payroll card are entitled to the protections of The Electronic Fund Transfer Act (EFTA) generally, and Regulation E's provisions applicable to payroll cards specifically.

115.    The Electronic Fund Transfer Act and Regulation E prohibit employers from forcing employees to receive wages via pay card of the employer's choosing without the option of receiving payment in cash or bank check which can be negotiated locally for cash without payment of fees.

116.    Among its consumer protection provisions, the EFTA prohibits the unsolicited issuance to a consumer of an electronic fund transfer card that does not meet all of the EFTA's unsolicited access device criteria. See 15 U.S.C. § 1693(i).

117.    ETFA Section 1693i prohibits the issuance, absent certain disclosures, of unsolicited validated cards that provide access to a "consumer's account." ETFA § 1693i(c) says that a card is "validated when it may be used to initiate an electronic fund transfer."

118.    ETFA Section 1693l-1 prohibits charging service fees to "general-use prepaid cards" unless the card has not been used for 12 months and other requirements have been met. ETFA § 1693l-1(b).

119.    A general-use prepaid card is (1) "redeemable at multiple, unaffiliated merchants or services providers, or automated teller machines"; (2) "issued in a requested amount"; (3) "purchased or loaded on a prepaid basis"; and (4) "honored . . . by merchants for goods or services, or at automated teller machines." ETFA § 1693l-1(a)(2)(A). A general-use prepaid card does not include a card that "is not marketed to the general public." Id. § 1693l-1(a)(2)(D)(iv).

120.    The Money Network Card is general-use prepaid card which charges a maintenance fee regardless of whether or not the card has been used within twelve months.

121.    From the moment Plaintiffs and each member of the FEDERAL MONEY NETWORK PAYROLL CARD CLASS received the Money Network card, she had only five days to either spend the money or retrieve the card's cash value.  Therefore, the Money Network Payroll System Cards are not the functional equivalent of cash or a check because the value of the cards quickly and permanently deteriorates.

122.    As previously stated, other pre-paid cards have either no fees or fess much less than those imposed by the Money Network Card.

123.    In addition, the fees were a result of shifting the burden of preparing payroll from the employer to the employee, which is prohibited by law.

124.    Therefore, Money Network Payroll system charge Plaintiff BONHAM fees charged by the were not reasonable.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

125.     Defendants and each of them forced employees who do not have established bank accounts to receive their wages on a payroll card of the employer's choosing that had unreasonably high fees and was not conveniently converted into cash, at full value without discount or fees at any local, nearby location within a reasonable period of time but not less than one year.

126.     Wherefore, Plaintiff BONHAM and all members of the FEDERAL MONEY NETWORK PAYROLL CARD CLASS demand return of all fees they paid for using the Money Network Payroll Card , pursuant to 15 U.S.C. § 1693m(a)(1), plus additional damages pursuant to 15 U.S.C. § 1693m(a)(2), together with costs and reasonable attorney's fee as determined by the court.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a jury trial pursuant to Federal Rule of Civil Procedure 38.

## PRAYER FOR RELIEF

Wherefore Plaintiffs, individually and on behalf of all Class Members alleged herein, pray for relief as follows:

1.     For an order conditionally certifying the action under the FLSA and providing notice to all FLSA CLASS members so they may participate in the lawsuit;

2.     For an order certifying the action as a traditional class action under Federal Rule of Civil Procedure Rule 23 on behalf of all members of the NEVADA WAGE CLASS and the WAGES DUE AND OWING SUB-CLASS, and the MONEY NETWORK PAYROLL CARD CLASSES;

3.     For an order appointing Plaintiffs as the Representatives of the Classes and their counsel as Class Counsel for the Classes;

4.     For damages according to proof for regular rate pay under federal laws for all hours worked;

5.     For damages according to proof for minimum rate pay under federal law for all hours worked;

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

6.    For damages according to proof for overtime compensation under federal law for all hours worked over 40 per week;

7.    For liquidated damages pursuant to 29 U.S.C. § 216(b);

8.    For damages according to proof for regular rate pay under NRS 608.140 and 608.016 for all hours worked;

9.    For damages according to proof for minimum wage rate pay under the Nevada Constitution for all hours worked;

10.   For damages according to proof for overtime compensation under NRS 608.140 and 608.018 for all hours worked for those employees who earned a regular rate of less than one and one half times the minimum wage for hours worked in excess of 8 hours per day and/or for all class members for overtime premium pay of one and one half their regular rate for all hours worked in excess of 40 hours per week;

11.   For sixty days of waiting time penalties pursuant to NRS 608.140 and 608.040-.050;

12.   For statutory and actual damages as provided by the Electronic Fund Transfer Act pursuant to 15 U.S.C. § 1693m(a)(1) and (2);

13.   For interest as provided by law at the maximum legal rate;

14.   For reasonable attorneys' fees authorized by statute;

15.   For costs of suit incurred herein;

16.   For pre-judgment and post-judgment interest, as provided by law; and

17.   For such other and further relief as the Court may deem just and proper.


DATED: July 30, 2020                    Respectfully Submitted,

                                        **THIERMAN BUCK LLP**


                                        /s/ Mark R. Thierman
                                        Mark R. Thierman
                                        Joshua D. Buck
                                        Leah L. Jones
                                        Joshua R. Hendrickson

*Attorneys for Plaintiffs and the Putative Classes*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**THIERMAN BUCK LLP**
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com